Argued April 8, reversed and remanded May 16, 1969

PAVLIK, *Respondent, v.* ALBERTSON'S,
INC., *Appellant.*

454 P2d 852

*Edward H. Warren,* Portland, argued the cause for appellant. With him on the briefs were Hershiser & Mitchell, Portland.

*Russell M. Allen,* Portland, argued the cause for respondent. With him on the brief were White, Sutherland & Gilbertson, Portland.

Before PERRY, Chief Justice, and SLOAN, GOODWIN, HOLMAN and HAMMOND,[*] Justices.

HOLMAN, J.

Plaintiff secured a judgment for damages for injuries suffered when she slipped and fell on a lettuce leaf in defendant's market. Defendant appealed.

Two specifications of defendant's alleged negligence were submitted to the jury for its consideration. The first was that defendant was negligent in placing the lettuce leaf on the floor. The second was that the lettuce leaf remained on the floor for such a length of time that defendant was negligent in not discovering and removing it. Defendant claims the court erred in submitting either or both of the specifications to the jury because there was no evidence to sustain them. This claim necessitates a minute examination of the evidence.

Defendant's market had two customer entrances facing the same street; one at each end of the building. Plaintiff went in the right-hand entrance as she faced the building. She had numerous empty bottles in her car for return to the market. Just inside the entrance she found an empty grocery cart which was situated as if someone had returned it by shoving it through the door. She returned to her automobile with the cart

---

[*] Hammond, J., did not participate in the decision of this case.

which she loaded with bottles. Upon returning through the same door with the loaded cart, she was faced with a magazine rack. To her immediate left, along the front of the store, there was a corridor running the length of the building to the door at the far end. Immediately alongside this corridor and between the two entrances was a bank of six checkout stations numbered 1 to 6. No. 1 station was the closest to her on the left as she entered. Behind the checkout stations was the merchandise for sale.

The only checkout station in operation was No. 3. Upon entering the store with the loaded cart, plaintiff did not go to the left, down the corridor at the front of the store, to this station. Instead, plaintiff went to the right, around the end of and then behind the magazine rack, where she met an employee with whom she stopped and talked for four or five minutes. At that time another employee came along and said he could check in the bottles for her. He ran the cart into checkout station No. 1 from the inside of the store as a customer would who was passing out with groceries. Plaintiff followed the cart and was paid for the bottles. She passed through the checkout station and turned left, down the corridor at the front of the building, towards her door of entrance. As she went to leave the checkout station, she saw an employee of defendant whom she knew and who was returning from the parking lot after packing out groceries for a customer. She was preparing to speak to him when she stepped on the lettuce leaf and fell. The employee saw the leaf just as she stepped on it but not in time to warn her. The leaf lay on the floor in the corridor at the front of the building just opposite checkout station No. 1 and about 12 feet from the front door through which she had entered. After her fall plain-

tiff discovered the leaf and described it as "well-marked."

Lettuce was kept on the produce counter, which extended along the wall at the far end of the building from where plaintiff entered. Lettuce was not pre-wrapped, but bags were provided at the produce counter for customers in case they wished to use them. Some customers used the bags and others did not. If the customer did not bag his lettuce at the produce counter but carried it loose in his cart to the check-out station, the checker would wrap it for him after picking off the loose or broken leaves. After checking the customer out, it was the employee's duty to re-move any of the loose lettuce leaves from the cart and to push it through the checkout station and across the corridor to where the baskets were lined up in a nested position lengthwise with the building along its front wall. The line of nested baskets was pointed away from the entrance where plaintiff entered and towards the entrance at the far end of the building. In order to nest the baskets, it was necessary for the employees to bring the empty baskets towards the entrance where plaintiff entered and to turn them around about oppo-site checkout station No. 1 for the purpose of lining them up against the front wall.

■ It is apparent from the above, perhaps exces-sively detailed description, that the most likely manner in which a lettuce leaf would be deposited on the floor at the location in which plaintiff fell was for it to fall from a cart that was being returned by defendant's employees to its storage place along the front of the building for re-use. It is highly unlikely that the leaf would have been deposited there by a customer be-cause it was not in a place where loaded carts were

ordinarily used by customers. In any event, customers using that portion of the store would leave with their groceries after passing through a checkout station and, therefore, their lettuce would be bagged or wrapped. The jury could have found from the evidence that it was more probable that the leaf was deposited there by defendant's employees, who had neglected to take it out of a cart, and that they were negligent in doing so. There was sufficient evidence to sustain the first allegation of negligence.

■■ Defendant owed to its customers the duty of reasonable care to keep its floors clean. However, it is not an insurer of their condition. We find no evidence from which it could be determined that the leaf had been on the floor a sufficient length of time for it to have been found and removed by defendant's employees in the exercise of reasonable care. There is no evidence from which it could be concluded that it had been on the floor a few seconds, or a few hours. Therefore, the second allegation of negligence should not have been submitted to the jury.

Plaintiff urges there was sufficient evidence to sustain the second allegation of negligence because defendant failed to prove either when it last inspected the area where the leaf lay, or when the area was last swept. Plaintiff also argues that the location and activities of defendant's employees, particularly the clerk who checked in her bottles, were such that in the exercise of reasonable care they should have discovered the leaf. These matters are relatively irrelevant in the absence of any evidence as to the length of time the leaf had been on the floor. An employee could have observed the *location* where the leaf lay or swept the floor two minutes earlier, and it would have been

to no avail had the leaf been deposited on the floor subsequent thereto. The only evidence from which it could legitimately be urged that the leaf had been there any considerable length of time was the testimony of plaintiff to the effect that it appeared to be "well marked." We do not believe that such evidence is sufficient to draw the inference because the leaf could hardly have appeared otherwise after plaintiff stepped on it.

Because we cannot say upon which specification of negligence the jury based its verdict, the judgment of the trial court is reversed and the case is remanded for a new trial.