Argued April 7, affirmed April 22, 1976

# SPROUL, *Respondent,*
## *v.*
# FOSSI, *Appellant.*

548 P2d 970

*William B. Murray,* Portland, argued the cause and filed briefs for appellant.

*Donald Roach,* Portland, argued the cause for respondent. On the brief was John R. Sidman, Portland.

TONGUE, J.

**TONGUE, J.**

This is an action for damages for fraud. The case was tried before the court, without a jury. Defendant appeals from a judgment awarding plaintiff $10,000 in actual damages and $5,000 in punitive damages. We affirm.

Defendant contends that there was insufficient evidence to establish fraud and, in particular, to prove that defendant made a promise with an intent not to perform that promise, as required to establish the fraud alleged in this case.

Plaintiff testified that defendant called him and told him that he had "a real good deal lined up where we'd double our money or more in one week's time," apparently by purchasing futures on chicken "broilers," and wanted $10,000 from plaintiff for that purpose. When plaintiff said that it would take some time to get $10,000 defendant told him that "It has to be done now" and that there was a "big hurry"; that the deal was "all rigged" and that plaintiff would get all his money back within a week with "a huge profit." He also testified that defendant took him to the "market" (apparently a commodities "futures" market) where the transactions would take place and told plaintiff that "he would be there every morning from the time it opened until the time the market closed" and would keep "right on top of it."

Plaintiff testified that based upon these representations he delivered to defendant a check for $10,000, but before doing so told defendant that he wanted "something down in black and white" until they could "get to his attorney" and that defendant then wrote a note as follows:

> "Program is buy broilers, hold till reaches about 45.00 then short to near or below todays levels. Each party to invest equal amounts and divide any and all profits equally."

To this the plaintiff then added:
"Each party to invest $10,000."

Plaintiff then gave defendant his check for $10,000.

Plaintiff also testified that the next morning defendant called to say that he had "already boughten a lot of broilers and we have made a big profit already." Plaintiff said that he went down to the "market," but that defendant was not there; that he also was not there when plaintiff went there several times later, and that plaintiff was told that defendant had been there "one morning for awhile," but had not been seen there since then.

Plaintiff never was paid back any of his money by defendant. He testified that defendant told him about the "huge profit that he had made," but "took off."

When called by plaintiff as an adverse witness defendant admitted that he had received $10,000 from plaintiff and that he did not invest any of that money in "broilers." Defendant offered no testimony after plaintiff rested his case, but also rested after moving for an involuntary nonsuit, which was denied.

Defendant relies upon the rule that where an action for damages is based upon failure to keep a promise, it must be proved that defendant did not intend to keep the promise at the time of the promise and that his subsequent failure to keep the promise is not sufficient evidence of his previous intent not to do so, citing *Cameron v. Edgmont Investment Co.,* 136 Or 385, 395, 299 P 698 (1931), among other cases to that effect.

As held more recently, however, it is sufficient if the evidence shows either an intent not to perform the promise or that the promise is made with a reckless disregard whether the promisor can or cannot perform the promise. *Elizaga v. Kaiser Found. Hospitals,* 259 Or 542, 548, 487 P2d 870 (1971), citing Prosser on Torts 745 (3d ed 1964). It is also established that a fraudulent intent not to keep a promise can be inferred

if sufficient circumstances are shown to support such an inference. *Conzelman v. N.W. P. & D. Prod. Co.,* 190 Or 332, 352, 225 P2d 757 (1950).

■ After reviewing the record in this case we hold that there was ample circumstantial evidence to support a finding by the trial court that when defendant promised to invest plaintiff's $10,000 in "broilers" he either did not intend to do so or made that promise with a reckless disregard whether he could or could not do so. The circumstances which lead us to this conclusion, in addition to his subsequent failure to do so, include the haste and urgency which defendant insisted upon and the exorbitant nature of defendant's assurance that the deal was "all rigged"; that they would "double our money or more in one week's time," and that early the next morning after receiving the $10,000, defendant called plaintiff and told him that he had "already boughten a lot of broilers and we have a big profit already." The trial court could properly find that these circumstances had all the "earmarks" of a confidence game; that defendant "conned" plaintiff into paying $10,000 to him with the full intention of pocketing the money, and with no intention of investing it in "broilers" for plaintiff's benefit.

■ The trial court could also properly find that defendant's conduct in this case was of such an "aggravated nature" so as to support an award of punitive damages, contrary to defendant's further contention that the evidence was insufficient to support such an award.

■ Defendant also contends that the trial court erred in receiving in evidence a transcript of plaintiff's testimony on a previous trial of the same case because plaintiff failed to make a showing of any substantial reason for plaintiff's absence at the subsequent trial, as required by ORS 41.900(8) in order for a transcript of testimony at a former trial to be admissible within the rule as stated in *Rogers v. Donovan,* 268 Or 24, 518 P2d 1306 (1974).

At the time of trial plaintiff's wife testified that plaintiff was ill with a coronary heart problem and hypertension and that his doctor had "ordered him not to appear for any excitement," although he was at home and that "when he builds up to it, he will help me a little bit," apparently in her jewelry store. She also produced a letter from his doctor to that effect, although dated several months previously. Based upon that showing the trial court properly held, over defendant's objection, that a sufficient showing had been made so as to permit the offer in evidence of a transcript of plaintiff's testimony at the previous trial.

■ After the conclusion of the trial defendant filed a motion for a new trial, based in part upon an affidavit to the effect that immediately after the trial, and on the same day, plaintiff was observed to be not ill, but standing behind the counter at his wife's jewelry store, and that he deliberately stayed away from trial to avoid cross-examination to show that his testimony at the previous trial was false in several particulars.

It appears that a hearing was held on that motion, at which plaintiff was authorized by the trial court to secure a further letter from plaintiff's doctor and the trial court then denied defendant's motion for a new trial upon that ground. We hold that in doing so the trial court did not abuse its discretion. It does not necessarily follow from the fact that plaintiff was observed to be standing behind the counter at his wife's store on the day of trial that he was physically able to safely appear and testify at that trial and to face the rigors of cross-examination by counsel, assuming that he was then in fact suffering from "angina pectoris, coronary artery disease, hypertension, and congestive heart failure," as stated in the original letter from his doctor. *Cf. Rogers v. Donovan, supra* at 28-29.

Finally, defendant contends that the trial court erred in receiving in evidence a transcript of the tes-

timony given by plaintiff at the former trial on the ground that such offered evidence "is in violation of the Oregon statute [ORS 165.540 and 41.910] which prohibits electronic recording of evidence and the subsequent use of that evidence," including "testimony pertaining to that which was recorded."

When that objection was made at the time of trial, the trial judge directed defendant to state the specific portions of the testimony given by plaintiff at the previous trial which defendant deemed to be inadmissible because of the illegally recorded telephone conversation of which defendant complained. Instead, defendant then objected to all of the testimony given by plaintiff at the former trial. The trial court then overruled defendant's objection and received in evidence a transcript of that testimony.

Upon examination of the record, including the transcript of that testimony, we find that the illegally recorded telephone conversation apparently took place on November 20, 1972 — some five months prior to the transaction involved in this case, which involved the payment of $10,000 by plaintiff to defendant on April 23, 1973. We also find, as held by the trial court, that none of the direct testimony by plaintiff at the former trial related to that telephone conversation or to the subject matter of that conversation, except for some reference to that subject matter on cross-examination by the defendant.

■ It is well established that when evidence is offered as a whole and an objection is made to the evidence as a whole and is overruled, the trial court will ordinarily not be reversed on appeal if any portion of the offered evidence was properly admissible, despite the fact that other portions would not have been admissible had proper objections been made to such portions of the offered evidence. See *American Oil etc. Co. v. Foust,* 128 Or 263, 268, 274 P 322 (1929); McCormick on Evidence 117, § 52 (2d ed 1972).

Because we find that at least the greater part of the testimony given by plaintiff at the former trial had no relation to the subject matter of the previous telephone conversation, we hold that the trial court did not err in overruling defendant's objection to the receiving in evidence of all of plaintiff's testimony at the former trial. For the same reason, we need not consider and decide in this case whether or not a recording of that conversation would have been admissible, had it been offered in evidence (which it was not) or whether any testimony by plaintiff at the former trial relating to the same subject matter of that illegally recorded telephone conversation would have been admissible in evidence had proper objection been made to such portions of that testimony. See *In re William M. Langley,* 230 Or 319, 323, 370 P2d 228 (1962).[1]

Finding no error, the judgment of the trial court is affirmed.

---

[1] Defendant also contends on appeal that there was a joint venture between the parties and that one party cannot maintain an action at law for damages against another party to a joint venture unless and until it has been "settled" and an accounting had to ascertain any balance due. This contention was also suggested by defendant's motion for a new trial. At the trial itself, however, that contention was made, and by motion for nonsuit, only with reference to plaintiff's separate cause of action for money had and received and was not made with reference to plaintiff's cause of action against defendant for damages for fraud. As to that cause of action defendant contended at that time only that the elements of fraud had not been established. Recovery was awarded on that cause of action, including punitive damages, although the trial court found that the $10,000 was also due and owing under the plaintiff's first cause of action.

In any event, and whatever may be the rule relating to partnerships generally, it is clear that a joint venture for a single transaction is terminated upon either the completion of the transaction or upon its failure, as in this case. Thus, one member of such a joint venture may sue the other at least in an action for fraud without first having a formal accounting. See *McKee v. Capitol Dairies,* 164 Or 1, 6, 99 P2d 1013 (1940).