Argued and submitted June 18, 1993, judgment for Tualatin Tire on fraud, CFIL and OFA claims reversed and remanded on appeal; judgment for Goodyear on Tualatin Tire's UTPA claim reversed and remanded and otherwise affirmed on cross-appeal July 27, 1994

# GOODYEAR TIRE & RUBBER COMPANY,
an Ohio corporation,
*Appellant - Cross-Respondent,*

*v.*

# TUALATIN TIRE & AUTO, INC.,
an Oregon corporation,
*Respondent - Cross-Appellant.*

(C89-0099CV; CA A73536)

879 P2d 193

Gregory A. Chaimov argued the cause for appellant - cross-respondent. With him on the briefs were Linda L. Marshall and Miller, Nash, Wiener, Hager & Carlsen.

Kim E. Hoyt argued the cause for respondent - cross-appellant. With her on the briefs were William D. Brandt and Ferder, Ogdahl, Brandt & Casebeer, and Mark E. Griffin and Griffin & McCandlish.

Before Rossman, Presiding Judge, Richardson, Chief Judge, and Leeson, Judge.

RICHARDSON, C. J.

## RICHARDSON, C. J.

This case involves multiple claims between a franchisor, Goodyear Tire & Rubber Company (Goodyear), and its franchisee, Tualatin Tire & Auto, Inc. (Tualatin Tire). Goodyear appeals and Tualatin Tire cross-appeals from a judgment awarding both parties damages. We reverse and remand on the appeal, and affirm in part and reverse in part on the cross-appeal.

Goodyear manufactures and sells tires. In August, 1986, Marvin Kiehm met with a representative of Goodyear to discuss its franchise program for tire dealerships. Marvin had experience in the automotive industry and wanted to establish a family business with his daughter, Ava. Over the next two months, Marvin met with representatives of Goodyear, discussed possible dealership locations and signed a letter of intent. Thereafter, Marvin and Ava attended a Goodyear training program in Ohio. In January, 1987, the Kiehms moved from California to Oregon. In March of the same year, they formed defendant corporation, Tualatin Tire, for the purpose of doing business as a Goodyear franchise.

Over the course of Marvin's initial discussions with Goodyear, Goodyear made numerous representations regarding the terms of the franchise agreement, the sublease of the building already leased to Goodyear and the equipment lease, which were part of Goodyear's franchise program. Several of the terms, however, turned out to be different than described. Initially, Goodyear represented that Marvin would need "at least $50,000" of unencumbered capital. Later, it required $75,000. Marvin also believed that the realty sublease was a "pass-through lease," that is, that the sublease would contain the same terms as the master lease that Goodyear held on the store. When Marvin received the sublease and the franchise agreement, he learned that the sublease did not have the same terms. Most significantly, the period of the sublease was considerably shorter than that of the master lease. An undisclosed one percent administrative fee had also been added to the sublease, and the first year's property taxes had not been prorated as agreed.

Marvin disputed the terms of the sublease and the franchise agreement and refused to sign them. Despite this

fact, Tualatin Tire opened for business in March, 1987. The following month, while Marvin was out of town, Ava, also an officer of Tualatin Tire, signed the sublease and the franchise agreement on the assurances of Goodyear representatives that the disputes had been resolved. The disputes had not been resolved, and Marvin, who still disputed the terms of the agreements, refused to pay rent on the sublease. In response, Goodyear stopped providing Tualatin Tire with technical and marketing support. Negotiations between the parties faltered several months later.

Goodyear brought this action to recover possession of the tire store and to recover sums due under the leases and on an open account. Tualatin Tire asserted counterclaims for breach of contract, common law fraud, and violations of the California Franchise Investment Law (CFIL), the Oregon Franchise Act (OFA) and the Oregon Unfair Trade Practices Act (UTPA).[1] The trial court granted summary judgment for Goodyear on its wrongful detainer claim and awarded it possession of the store. That judgment is not part of this appeal.[2] The trial court also directed a verdict against Tualatin Tire on its UTPA and breach of contract claims.

The remaining claims were submitted to the jury, which returned verdicts for both parties. The jury found for Goodyear on its claims for nonpayment of rent on the realty sublease, nonpayment of rent on the equipment lease, and on the open account. On a post-verdict motion, the trial court also awarded Goodyear prejudgment interest on its claims for rent. The jury returned verdicts for Tualatin Tire on the CFIL claim ($74,000), the OFA claim ($112,000) and the common law fraud claim ($260,000). The court granted Goodyear's motion to compel Tualatin Tire to elect a remedy, and Tualatin Tire chose the $260,000 common law fraud award. The trial court also awarded Tualatin Tire attorney fees and costs pursuant to the OFA. ORS 650.020(3).

On appeal, Goodyear makes ten assignments of error. In its first six assignments, it argues that the trial court

---

[1] Cal Corporations Code §§ 31201, 31301 (West 1977); ORS 650.020(1); ORS 646.608(1).

[2] Tualatin Tire appealed that judgment and we affirmed. *Goodyear Tire & Rubber Co. v. Tualatin Tire & Auto, Inc.*, 104 Or App 305, 800 P2d 1093 (1990).

erred in refusing to withdraw from the jury's consideration six of the 13 allegations of misrepresentation supporting Tualatin Tire's fraud, CFIL and OFA claims, because no evidence in the record supported those allegations. Goodyear further contends that under *Whinston v. Kaiser Foundation Hospital*, 309 Or 350, 788 P2d 428 (1990), those claims should be remanded for a new trial, because it is impossible to discern from the jury's verdict whether it relied on only those allegations that were supported by the evidence.

Tualatin Tire answers that Goodyear is not entitled to reversal of the judgment and a new trial because it did not move for a new trial when it moved for judgment *n.o.v.* It argues that, under *Whinston v. Kaiser Foundation Hospital, supra*, a motion for a new trial is mandatory to obtain relief of a new trial if one or more of the allegations should have been stricken. Because that is so, Tualatin Tire argues, we should not address the first six assignments of error.

In *Whinston*, three allegations of negligence were submitted to a jury, which returned a verdict in favor of the plaintiff. The defendant moved for a judgment *n.o.v.* and in the alternative for a new trial. The trial court granted the judgment *n.o.v.* for lack of evidence. The Supreme Court concluded that there was some evidence to support one of the allegations and that the judgment *n.o.v.* was, therefore, not properly granted. The court concluded, however, that the defendant's motion to strike certain allegations should have been allowed. The court then restated the rule set out in *Pavlik v. Albertson's, Inc.*, 253 Or 370, 454 P2d 852 (1969):

> "If the court cannot determine whether the verdict was based on an allegation supported by the evidence or on one unsupported by the evidence, the result is a new trial." 309 Or at 359.

The court went on to explain the predicate action for taking advantage of the *"Pavlik"* rule:

> "To avail oneself of the *Pavlik* rule, a party must have taken some action at trial to remove the unsupported allegation from the jury's purview. The rationale for this proposition is 'the general rule of appellate procedure that an appellate court will not consider a question on appeal unless it has been first presented to and ruled upon by the lower court.' " 309 Or at 359. (Citation omitted.)

The court in *Whinston* then discussed the alternative motion for new trial that the trial court had not ruled upon and determined, on the basis of *Pavlik*, that the motion for new trial should have been granted.

■ The court in *Whinston* discussed the motion for new trial because of the procedural posture of the case and not because it was a preservation requirement. Here, Goodyear moved for a directed verdict and then made motions to strike the specific allegations that it assigns as erroneously considered by the jury. That action was sufficient to preserve the issues for our review and to obtain a new trial pursuant to the rule of *Pavlik* if any of the allegations were not supported by the evidence. *Whinston v. Kaiser Foundation Hospital, supra*, 309 Or at 360 n 11.

We turn to the merits of Goodyear's first six assignments. Goodyear argues that there was not any evidence to support the following allegations of misrepresentation: That it misrepresented Tualatin Tire's obligation to pay property taxes; that it misrepresented the amount of unencumbered capital that Tualatin Tire would need to establish the franchise; that it failed to disclose the administrative fee in the realty sublease; that it misrepresented the advertising support it would provide; that it misrepresented product adjustments it would make; and, that it misrepresented the technical support it would provide.

■ We review to determine whether there is any evidence in the record from which the jury might conclude that the allegations were true. *Brown v. J. C. Penney Co.*, 297 Or 695, 705, 688 P2d 811 (1984). As the non-moving party, Tualatin Tire is entitled to the benefit of all favorable evidence and reasonable inferences. *Brown v. J. C. Penney Co., supra*.

■■ To recover for common law fraud, a party must establish: (1) a representation; (2) its falsity; (3) its materiality; (4) the speaker's knowledge of its falsity or ignorance of its truth; (5) the speaker's intent that the representation should be acted upon by the hearer in the manner reasonably contemplated; (6) the hearer's ignorance of the representation's falsity; (7) the hearer's reliance on the truth of the representation; (8) the hearer's right to rely thereon; and

(9) the hearer's consequent and proximate injury. *Webb v. Clark*, 274 Or 387, 391, 546 P2d 1078 (1976). In addition, if the representation is a promise, there must be proof that Goodyear either did not intend to perform when it made the promise or that it made the promise with reckless disregard for whether it could perform. *Sproul v. Fossi*, 274 Or 749, 752, 548 P2d 970 (1976); *The Communications Group, Inc. v. GTE Mobilnet*, 127 Or App 121, 126, 871 P2d 502 (1994).

■■ Goodyear argues, *inter alia*, that its representations regarding the prorated taxes, advertising, product adjustments and technical support were all promises and that there is no evidence of the requisite intent. We address the tax issue first. Tualatin Tire alleged that Goodyear promised to prorate the property taxes as of the effective date of the sublease but instead billed it for the entire amount. Tualatin Tire points to evidence of Goodyear's billing to support its allegation. The mere failure to perform a promise, however, is not sufficient to support an inference that a party did not intend to perform at the time the promise was made. *Conzelmann v. N. W. P. & D. Prod. Co.*, 190 Or 332, 352, 225 P2d 757 (1950); *The Communications Group, Inc. v. GTE Mobilnet, supra*, 127 Or App at 126. In addition to nonperformance, other circumstances must be shown to support an inference that the promisor never intended to perform. *Conzelmann v. N. W. P. & D. Prod. Co., supra*; *The Communications Group, Inc. v. GTE Mobilnet, supra*. Tualatin Tire does not point to any other evidence from which a jury could infer that Goodyear did not intend to perform on its promise to prorate taxes at the time it made the promise, and we find none in the record. The court erred in allowing the allegation to go to the jury.

■ A similar deficiency exists with regard to Goodyear's promises of advertising, product adjustments and technical support. The evidence reveals that Goodyear initially provided Tualatin Tire with advertising and technical support. It helped develop and approved a grand opening budget and advertising plan. It also provided training and business support to Tualatin Tire. However, after Tualatin Tire continued to dispute the terms of the sublease and refused to pay rent, Goodyear stopped providing Tualatin Tire with tires and advertising and refused to make product adjustments for obsolete products.

To substantiate its allegations, Tualatin Tire points to testimony by its principals that the promises were not kept and argues:

"Given the general conduct of Goodyear and its numerous other misrepresentations, a jury could conclude that Goodyear did not intend to fulfill these promises when they were made, or made the promises with reckless indifference to their truth."

As discussed above, the mere failure to perform is insufficient to establish intent not to perform at the time the promise was made. Tualatin Tire does not specify the conduct or representations from which it believes that the requisite intent may be inferred, and we find no evidence in the record of "general conduct" that would support a reasonable inference that Goodyear did not intend to fulfill its promises when it made them or that it made them with reckless disregard of its ability to perform.

In sum, the allegations of misrepresentation regarding taxes, advertising, product adjustments and technical support were promises, and there was no evidence in the record to support the required element of intent to make those promises actionable as fraud. The trial court erred in submitting those allegations to the jury. Because four of the 13 allegations of misrepresentation were unsupported by the evidence and we cannot tell which allegation or allegations the jury relied on in reaching its general verdict of fraud, we remand for further proceedings consistent with *Pavlik*. *Whinston v. Kaiser Foundation Hospital, supra.*

 Goodyear also challenges the trial court's refusal to strike the same allegations discussed above as bases for Tualatin Tire's claims under the CFIL and OFA. The pertinent sections of both acts prohibit franchise sellers from making an "untrue statement of material fact."[3] A promise is

---

[3] Cal Corporations Code § 31201 provides:

"It is unlawful for any person to offer or sell a franchise in this state by means of any written or oral communication not enumerated in Section 31200 which includes an untrue statement of a material fact or omits to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading."

ORS 650.020(1) provides:

"Any person who sells a franchise is liable as provided in subsection (3) of this section to the franchisee if the seller:

a statement of fact in that it is a representation of a present intent to perform the promise. Prosser and Keeton, *Torts* 762-73, § 109 (5th ed 1984); *Tarmann v. State Farm Mut. Auto. Ins. Co.*, 2 Cal App 4th 153, 158-59, 2 Cal Rptr 2d 861 (1991). A promise is "untrue" if the seller does not intend to perform the promise when the promise is made. As already discussed, there is no evidence that, at the time Goodyear made promises regarding taxes, advertising, product adjustments and technical support, it did not intend to perform. The trial court erred in submitting those allegations to the jury on the CFIL and OFA claims, and we remand those claims as well.

In its seventh and eighth assignments of error, Goodyear challenges the trial court's decision to allow the jury to determine lost profits on Tualatin Tire's fraud claim and the court's instruction regarding lost profits. Because we remand on the fraud claim, we do not address those assignments.

In its ninth assignment, Goodyear argues that the trial court erred by submitting Tualatin Tire's OFA claim to the jury, over Goodyear's objection, instead of determining that claim itself. It contends that Tualatin Tire had no right to a jury trial on that claim because the remedy provided in ORS 650.020(3) is "historically equitable." Tualatin Tire argues that it brought an action at law for damages under ORS 650.020 and was entitled to a jury trial. Because this issue is likely to arise again on retrial, we address it.

ORS 650.020(3) provides:

"The franchisee may recover any amounts to which the franchisee would be entitled upon an action for a rescission, reasonable attorney fees at trial and on appeal and court costs."

Because the statute does not provide a right to jury trial on its face, the issue is whether the Oregon Constitution provides that right. The right to a jury trial under Article I, section 17, of the Oregon Constitution applies only in those classes of cases in which the right was customary at the time the

---

"(a) Employs any device, scheme or artifice to defraud; or

"(b) Makes any untrue statement of a material fact or omits to state a material fact necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading."

constitution was adopted or in cases of like nature. *Molodyh v. Truck Insurance Exchange*, 304 Or 290, 295, 744 P2d 992 (1987). In *Wincer v. Ind. Paper Stock Co.*, 48 Or App 859, 862, 619 P2d 15 (1980), we explained:

> "At the time of the adoption of our constitution[,] courts were classified according to the nature and extent of their jurisdiction, their forms of proceeding, and the principles upon which they administered justice, as either courts of admiralty, courts of equity, or courts of law. The character of the proceeding determined whether a matter was to be tried by a court or jury. The court sitting in equity was the trier of fact, * * * while in a court of law the litigants were entitled to a trial by jury. The question of whether a litigant was entitled to a trial by jury depended upon the type of jurisdiction invoked and the remedy sought. If the remedy is historically equitable, the constitution does not require the matter to be tried by jury." (Citations omitted.)

The remedy provided in ORS 650.020(3) is for "any amounts to which the franchisee would be entitled upon an action for a rescission." In *Bollenback v. Continental Casualty Co.*, 243 Or 498, 414 P2d 802 (1966), the Supreme Court explained that, historically, a party induced to enter a contract by fraud could obtain restitution based on rescission by bringing an action at law *or* a suit in equity. In an action at law for restitution based on rescission, the plaintiff was required to place the defendant in *status quo ante* or attempt to do so before bringing the action. In a suit for equitable rescission, that requirement was unnecessary because the court in equity had power to render full and appropriate relief to all parties.

Goodyear argues that the relief in ORS 650.020 is historically equitable, because the statute refers to the equitable form of rescission. It points to the original version of ORS 650.020(3), which provided:

> "The franchisee may recover any amounts to which he would be *entitled upon a suit in equity* for a rescission * * *."
> Or Laws 1973, ch 509, § 4. (Emphasis supplied.)

In 1979, the legislature changed the statutory language from "a suit in equity" to "an action." Or Laws 1979, ch 284, § 185. Goodyear argues that the change was the result of the merger

of law and equity brought about by adoption of ORCP 2,[4] and did not reflect a substantive change regarding a party's right to a jury trial.

We agree that the changes brought about by ORCP 2 were procedural in nature and did not affect the right to jury trial. *Rantru v. Unger*, 73 Or App 680, 682, 700 P2d 272 (1985). We also agree that the remedy provided in ORS 650.020(3) is historically equitable, even though monetary in character. The language of the statute as originally enacted specifies that the relief was one which the franchisee would be entitled to in a suit in equity. Monetary relief was available as part of an equitable rescission. *Bollenback v. Continental Casualty Co., supra*, 243 Or at 502-03. The relief provided in ORS 650.020(3) is also similar to the historically equitable remedy in that rescission is not a prerequisite to obtaining monetary relief. Because the remedy provided in ORS 650.020(3) is historically equitable in nature, Tualatin Tire's OFA claim should be tried to the court on remand.

In its tenth assignment, Goodyear argues that the court erred in awarding attorney fees to Tualatin Tire under ORS 650.020(3). Tualatin Tire cross-assigns error to the amount of fees awarded. Because we remand on the pertinent claims, we do not address either assignment.

Tualatin Tire assigns four errors in its cross-appeal. We first address its contention that the trial court erred in granting Goodyear's motion for a directed verdict on Tualatin Tire's UTPA claim.[5] The trial court gave the following reason

---

[4] ORCP 2 provides:

"There shall be one form of action known as a civil action. All procedural distinctions between actions at law and suits in equity are hereby abolished, except for those distinctions specifically provided for by these rules, by statute, or by the Constitution of this state."

[5] Tualatin Tire alleged that Goodyear violated ORS 646.608(1)(s), (t) and (u). That statute provides, in pertinent parts:

"(1) A person engages in an unlawful practice when in the course of the person's business, vocation or occupation the person does any of the following:

"* * * * *

"(s) Makes false or misleading representations of fact concerning the offering price of, or the person's cost for real estate, goods or services.

"(t) Concurrent with tender or delivery of any real estate, goods or services fails to disclose any known material defect or material nonconformity.

for directing the verdict:

> "[W]hen you decide to do business as a corporation, be it Sub-Chapter S or other things, you gain some rights and give up some things. I just don't think this act is going to apply to litigation business to business like this. So the motion is granted."

On appeal, Tualatin Tire argues that the UTPA allows a business to pursue a private action. ORS 646.638(1) provides, in part:

> "Except as provided in subsection (7) of this section, *any person* who suffers any ascertainable loss of money or property, real or personal, as a result of wilful use or employment by another person of a method, act or practice declared unlawful by ORS 646.608, may bring an individual action in an appropriate court to recover actual damages or $200, whichever is greater." (Emphasis supplied.)

ORS 646.605(4) defines "person" as used in ORS 646.638:

> " 'Person' means natural persons, corporations, trusts, partnerships, incorporated or unincorporated associations, and any other legal entity except bodies or officers acting under statutory authority of this state or the United States."[6]

These statutes clearly contemplate that a corporation may bring a private action against another corporation. The trial court erred when it directed a verdict for Goodyear on Tualatin Tire's UTPA claim.[7]

■ Tualatin Tire also assigns error to the trial court's award of prejudgment interest on Goodyear's claims for non-

---

> "(u) Engages in any other unfair or deceptive conduct in trade or commerce."

We note that ORS 646.608 has been amended several times since the 1985 version that is applicable to this case; however, the pertinent provisions quoted here have not been changed by those amendments.

[6] ORS 646.605 was amended in 1989 (Or Laws 1989, ch 137, § 1) and in 1993 (Or Laws 1993, ch 508, § 40) in ways that do not affect subsection 4.

[7] The parties also argue about whether the transactions regarding the subject franchise fall within the definition of "real estate, goods or services" in ORS 646.605(7) (*since amended by* Or Laws 1989, ch 137, § 1). We express no opinion on that issue, because the trial court should rule on it in the first instance on remand.

payment of rent. An award of prejudgment interest on damages for a breach of contract is proper if

"(1) the exact amount of damages is either ascertained or readily ascertainable, and (2) the time from which the interest runs is easily ascertained." *Krieg v. Union Pacific Land Res. Corp.*, 269 Or 221, 234, 525 P2d 48 (1974). (Footnote omitted.)

Tualatin Tire contends that Goodyear's damages were not readily ascertainable because of the parties' conflicting claims about the amounts in dispute. It points to the jury's awards, which are less than what Goodyear requested. Goodyear admits that at trial Tualatin Tire disputed liability, the amount of the lease payments and the time from which the lease payments should run. However, it contends that once the jury determined these facts, the computation of damages for non-payment of rent required no more than multiplying the amount of rent by the number of months for which rent was owed and not paid.

We have held, on several occasions, that even though damages are not ascertainable until issues of fact have been decided, prejudgment interest is proper. *See Parsons v. Henry*, 65 Or App 627, 634, 672 P2d 717 (1983), *rev den* 297 Or 82 (1984); *Employers' Fire Ins. v. Love It Ice Cream*, 64 Or App 784, 670 P2d 160 (1983); *Walter E. Heller Western, Inc. v. Bohemia, Inc.*, 61 Or App 57, 655 P2d 1073 (1982); *McKean v. Bernard*, 54 Or App 540, 635 P2d 673 (1981); *Isler v. Shuck*, 38 Or App 233, 589 P2d 1180 (1979); *see also Guinasso v. Pacific First Federal*, 89 Or App 270, 279, 749 P2d 577, *rev den* 305 Or 672 (1988) (expressly affirming the reasoning in *Banister Continental Corp. v. NW Pipeline Corp.*, 76 Or App 282, 709 P2d 1103 (1985), *vacated* 301 Or 763, 764, 724 P2d 822 (1986)). We agree with Goodyear that once the jury resolved the predicate factual issues, damages were easily ascertainable. Tualatin Tire's other argument does not merit discussion. The court did not err in awarding prejudgment interest.

Tualatin Tire also assigns error to the trial court's denial of its motion for a directed verdict on Goodyear's contract claim. It argues that the realty sublease incorporates a notice requirement of the master lease and that Goodyear failed to prove that the required notice was given. At trial,

Tualatin Tire only made a general assertion that preconditions of the leases (both the realty sublease and the equipment lease) had not been met. It then argued specifically about the notice required by the franchise security agreement. The argument Tualatin Tire makes on appeal regarding the notice in the realty sublease was not raised below and ruled on by the trial court. We do not address it here. *Ailes v. Portland Meadows, Inc.*, 312 Or 376, 823 P2d 956 (1991).

Tualatin Tire also assigns error to the trial court order requiring it to elect remedies. We do not address that assignment because, on Goodyear's appeal, we remand the pertinent claims.

On appeal, judgment for Tualatin Tire on fraud, CFIL and OFA claims reversed and remanded; on cross-appeal, judgment for Goodyear on Tualatin Tire's UTPA claim reversed and remanded and otherwise affirmed.