Orders, Supreme Court, New York County (Richard B. Lowe, III, J.), entered May 5 and 6, 2011, which, to the extent appealed from as limited by the briefs, granted plaintiff Joseph W Sullivan partial summary judgment as to his first cause of action, and denied defendants William F. Harnisch’s, Peconic Partners LLC’s and Peconic Asset Managers LLC’s motion for summary judgment with respect to plaintiffs first and eighth causes of action, unanimously reversed, on the law, with costs, plaintiffs motion denied, and defendants’ motion granted.
“It is well settled that a written agreement which is complete, clear and unambiguous on its face must be enforced according to the plain meaning of its terms” (Masters v 14-22 Leonard St. Assoc. LLC, 11 AD3d 380, 381-382 [2004], citing Vermont Teddy Bear Co. v 538 Madison Realty Co., 1 NY3d 470 [2004]). The substantially similar operating agreements governing the subject investment funds clearly and unambiguously provided that defendant Harnisch had the sole discretion to determine plaintiffs “Sharing Ratio,” which would be used to determine his allocation of the bonus pool comprised of 75% of the funds’ profits. There was no limitation on when Harnisch was permitted to set the sharing ratio, since the operating agreements provided that it was to be “determined from time to time.”
Section 10 (d) of the operating agreements, which states, in pertinent part, that “[i]f there is a change in any Member’s Ownership Percentage or Sharing Ratio during any fiscal year or other period of the Company, subsequent allocations of Profits and Losses shall be adjusted in accordance with Section 706 of the [IRS] Code using the closing-of-the-books method,” *668 cannot, as the motion court found, be reasonably construed to bar all retroactive adjustments of the sharing ratio. Rather, that section merely sets forth how the limited liability company will allocate profits and losses in the event that a sharing ratio is altered during a fiscal year and there is thus one ratio for the period of the fiscal year before the date of the change and another ratio for the period after that date. It cannot be read to prohibit Harnisch, after a fiscal year is complete, from first deciding retroactively what a member’s sharing ratio will be for that fiscal year, a right that, again, is clear from the definition of the term sharing ratio.
We reject plaintiff’s other various arguments. For example, plaintiff contends that because the operating agreements contemplated that the sharing ratio would be set forth on a schedule, it was “imbued with some permanence and stability.” However, the discretion granted to Harnisch was clear, and there is no reason to believe that in requiring that the ratio be recorded the parties intended to dilute that discretion. Plaintiff further argues that if defendants’ interpretation of the operating agreements is correct, it leaves him in the untenable position of having paid estimated taxes with an expectation that his income would be significantly higher than it turned out to be. However, that plaintiff detrimentally relied on an interpretation of the operating agreements that turns out to have been mistaken is no reason to rewrite the agreements.
Finally, plaintiff relies on extra-contractual evidence in support of his interpretation. This includes K-ls and a draft memo that plaintiff proclaims establish that he was entitled to a 15% sharing ratio. Even if these documents establish that plaintiff had a sharing ratio of 15% before Harnisch decided on how to distribute the bonus pool for the 2007 fiscal year, they shed no light whatsoever on whether Harnisch had the right to change the sharing ratio, even impetuously and on a retroactive basis. Indeed, the operating agreements allowed Harnisch to alter plaintiffs sharing ratio as he saw fit. Because plaintiff failed to protect himself in the operating agreements, his bonuses were subject to Harnisch’s whimsy, and the court erred in supplying its own calculation of a sharing ratio for plaintiff (see Greenfield v Philles Records, 98 NY2d 562, 569-570 [2002]) instead of dismissing his breach of contract claim.
Plaintiff’s breach of fiduciary duty claim should have been dismissed, since plaintiff has not even alleged a duty separate and apart from defendants’ duties under the terms of the operating agreements (see Verizon N.Y., Inc. v Optical Communications Group, Inc., 91 AD3d 176, 179-180 [2011]). *669 Concur — Mazzarelli, J.P., Friedman, Acosta, Freedman and Abdus-Salaam, JJ.