### TALK RADIO NETWORK ENTERPRISES et al., Plaintiffs,

v.

### CUMULUS MEDIA INC., et al., Defendants.

1:16–cv–00609–CL

United States District Court, D. Oregon, Medford Division.

Signed September 11, 2017

favor of declining jurisdiction. *Brillhart v. Excess Ins. Co.*, 316 U.S. 491, 495, 62 S.Ct. 1173, 86 L.Ed. 1620 (1942).

Carter W. Glahn, Pro Hac Vice, Ronald H. Severaid, Pro Hac Vice, Severaid & Glahn, PC, Sacramento, CA; Joseph M. Alioto, Pro Hac Vice, Alioto Law Firm, San Francisco, CA, Max C. Whittington, Christopher L. Cauble, Cauble, Cauble & Selvig, LLP, Grants Pass, OR, for Plaintiffs.

Christopher Tayback, Pro Hac Vice, Prashanth Chennakesavan, Pro Hac Vice, Richard Schirtzer, Pro Hac Vice, Quinn Emanuel Urquhart & Sullivan, LLP, Los Angeles, CA, Vicki L. Smith, Lane Powell, PC, Portland, OR, for Defendants.

## ORDER

AIKEN, District Judge:

On May 2, 2017, Magistrate Judge Mark D. Clarke filed a Report and Recommendation (# 67), and the matter is now before this Court. See 28 U.S.C. § 636(b)(1), Fed. R. Civ. P. 72(b). Plaintiffs have filed Objections (# 75), Defendants have responded to Plaintiffs' Objections (# 76) and I have reviewed the file of this case *de novo.* 28 U.S.C. § 636 (b)(1); McDonnell Douglas Corp. v. Commodore Bus. Mach., Inc., 656 F.2d 1309, 1313 (9th Cir. 1981).

I have given this matter *de novo* review. I find no error. Accordingly, I ADOPT the Report and Recommendation (# 67). Defendants' Motion to Dismiss (# 54) is GRANTED. This case is DISMISSED with prejudice.

It is so ORDERED and DATED this 11th day of September, 2017.

1. The Court reserves ruling on Defendants' Motion to Transfer Venue (# 33) until after

## REPORT & RECOMMENDATION

CLARKE, Magistrate Judge.

Defendants Cumulus Media, Inc.; Westwood One, Inc.; Lewis Dickey, Jr.; and Charles Steinhauer move to dismiss all claims. (# 54).[1] For the reasons below, Defendants' motion to dismiss should be GRANTED, and Plaintiffs' Second Amended Complaint should be dismissed with prejudice.

## PRELIMINARY MATTERS

Defendants filed a Request for Judicial Notice (# 16). As they did in their previously filed motion to dismiss (# 32), they ask the Court to take notice of the settlement agreement associated with earlier litigation between the parties, as well various corporate disclosure statements. A court may take notice of pleadings so far as they are a matter of public record; this includes notice of another court's opinion, which is "not for the truth of the facts recited therein, but for the existence of the opinion." *Lee v. City of Los Angeles,* 250 F.3d 668, 690 (9th Cir. 2001) (internal quotations and citations omitted). Notice of these items does not convert a motion to dismiss to one for summary judgment. *Id.* at 688–89. Plaintiffs do not contest the request. The Court grants it.

## BACKGROUND

Plaintiffs produce nationally syndicated talk radio shows under a variety of production enterprises. Defendants are a coalition of associated broadcast media groups formed by mergers and acquisitions. Many of the operative facts were explained in the Court's September 13, 2016, Findings and Recommendations (# 38), adopted in full on November 14, 2016 (# 42). These facts

ruling on the present Motion to Dismiss.

have not changed. Hence, in lieu of rehashing the facts, which are already well-known to the parties, the Court refers the parties to the September 2016 Findings and Recommendation. Additional facts related to particular claims at issue here are discussed below.

## STANDARDS

■ Pursuant to Rule 12(b)(6), a motion to dismiss will be granted where the plaintiff fails to state a claim upon which relief may be granted. In order to state a claim for relief, a pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted 'tests the legal sufficiency of a claim.'" *Conservation Force v. Salazar*, 646 F.3d 1240, 1242 (9th Cir. 2011) (quoting *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001)).

■ Dismissal under Rule 12(b)(6) is proper "if there is a 'lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory.'" *Id.* (quoting *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988)). To survive a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)); *Shroyer v. New Cingular Wireless Servs., Inc.*, 622 F.3d 1035, 1041 (9th Cir. 2010). In evaluating a motion to dismiss, the court must accept the allegations of material fact as true and construe those allegations in the light most favorable to the non-moving party. *Odom v. Microsoft Corp.*, 486 F.3d 541, 545 (9th Cir. 2007) (internal citations omitted).

## DISCUSSION

### I. Breach of contract

#### A. Incorporation by reference

Plaintiffs assert Defendants breached a 2014 contract for advertising representation services. Plaintiffs did not place contractual terms in the operative Second Amended Complaint, nor did they attach the contract to it. In moving to dismiss Plaintiffs' earlier complaint, Defendants submitted a copy of a single contract between Westwood and one of the four plaintiffs, Talk Radio Network Enterprises ("TRNE"), in association with supporting declarations. Steinhauer Decl. Ex. A (# 33–1); Dickey Decl Ex. A (# 33–2) ("2014 ad-rep contract").

■ As explained in the September 2016 Findings and Recommendation, the 2014 ad-rep contract can be considered by the Court without converting Defendants' motion to dismiss to a motion for summary judgment. A motion to dismiss may consider material "properly submitted *as part of the complaint*." *Branch v. Tunnell*, 14 F.3d 449, 453 (9th Cir. 1994) (*cert. denied*) (*rev'd on other grounds*) (emphasis in original). Moreover, "when [the] plaintiff fails to introduce a pertinent document as part of his pleading," as is the case here, "the defendant may introduce the exhibit as part of his motion attacking the pleading." *Id.* (citing 5 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1327, at 762–63 (2d ed. 1990) and *Romani v. Shearson Lehman Hutton*, 929 F.2d 875, 879 n.3 (1st Cir. 1993)). Neither party disputes the authenticity of the 2014 ad-rep contract. The Court therefore looks to the contract, as appropriate, in evaluating the motion to dismiss Plaintiffs' claims.

## B. Breach of contract

Plaintiffs argue Westwood "beached or otherwise violated multiple obligations it owes to Plaintiffs under the Rep Agreement." Sec. Am. Compl. ¶ 60. First, as the Court articulated in its September 2016 Findings and Recommendation, the existence of a contract is adequately pleaded as between TRNE and Westwood only. The Complaint generally alleges that TRNE acted as an agent for the remaining plaintiffs; however, the 2014 ad-rep contract neither includes, indicates, nor cites the remaining plaintiffs (# 33–1).

■ Next, as the Court also previously found, the 2014 ad-rep contract is governed by New York law. The contract states, "[t]his Agreement shall be construed in accordance of the laws of the State of New York, without regard to conflict of law principles." Contract, p. 6 ¶ 8.5. Oregon and New York follow the principle that the parties may choose the law that is to govern their contracts. *Young v. Mobil Oil Corp.*, 85 Or.App. 64, 67, 735 P.2d 654 (1987); *A.S. Rampell, Inc. v. Hyster Co.*, 3 N.Y.2d 369, 165 N.Y.S.2d 475, 144 N.E.2d 371 (1957). Accordingly, the Court will apply New York law to Plaintiffs' breach-of-contract claim.

■ A breach-of-contract claim in New York must allege "the existence of a contract, the plaintiff's performance under the contract, the defendant's breach of that contract, and resulting damages." *JP Morgan Chase v. J.H. Elec. of N.Y., Inc.*, 69 A.D.3d 802, 803, 893 N.Y.S.2d 237 (2010).

The allegations in the current breach-of-contract claim are virtually identical to the allegations contained in the original complaint's breach-of-contract claim. For instance, TRNE currently contends "Westwood has beached or otherwise violated multiple obligations it owes to Plaintiffs under the Rep Agreement." Sec. Am. Compl. ¶ 60. Likewise, in the original complaint, it alleged, "Westwood has beached

or otherwise violated multiple obligations it owes to Plaintiffs under the Rep Agreement." Compl. ¶ 120.

Moreover, TRNE specifically alleges, "Westwood's contractual violations include": (1) "underpayment of, and failure to pay, advertising revenues"; (2) "failure to include Plaintiffs' programs in appropriate advertising bundles" and inclusion of Plaintiffs' programs only in less-favorable bundles; (3) "failure to pay other amounts due for advertising revenues of Plaintiffs collected by Westwood"; (4) "failure to account to Plaintiffs for ad revenues collected and disbursements due," and "failure to issue required reports related thereto"; (5) "failure to use commercially reasonable efforts in performing Westwood's duties to Plaintiffs"; and (6) "refusal to permit Plaintiffs' required access to Westwood's books and accounting records." Sec. Am. Compl. ¶ 60. The original complaint contained these identical allegations. *See* Compl. ¶ 120.

As this Court previously explained in the September 2016 Findings and Recommendation, despite the lengthy allegations, the original complaint failed to adequately state a claim for breach of contract because "TRNE d[id] not [ ] assert any specific facts regarding payments that were or were not made in breach of this agreement," "specific facts pertaining to record inspection," and it "fail[ed] to point to specific facts showing Defendants failed to make 'commercially reasonable' efforts to sell TRNE's programming." *Talk Radio Network Enters. et al. v. Cumulus Media et al.*, 1:16–cv–00609–CL, 2016 WL 6693183, at *6 (D. Or. Sep. 13, 2016). Indeed, the Court found only "that an agreement was made that Westwood would attempt sales," but there was a lack of factual assertions that would plausibly allow the Court to draw the inference that

Defendants failed to act in a commercially reasonable manner. *Id.*

In arguing that its Second Amended Complaint adequately "cure[s] any deficiencies in the contract claim" and that it sufficiently alleges facts to plausibly state a claim for breach of contract, TRNE argues that it has alleged the "elements" of breach of contract "with more precision" in its Second Amended Complaint. Resp. to Mot. to Dismiss, at 4. The Court fails to see how. In addition to the similarities between the allegations in TRNE's current breach-of-contract claim and those found in the original complaint, discussed above, the background facts alleged in Plaintiffs' Second Amended Complaint are nearly identical to those alleged in the original complaint. The only meaningful difference in nearly sixteen pages of background facts is a single paragraph that Plaintiffs have added, stating, "[o]n or about July 7, 2014, [Defendant] WYD [Media Management, LLC] announced" the launch of an "ad rep 'sales arm' WYD Media Ad Sales, LLC . . . ." Sec. Am. Compl. ¶ 36. Plaintiffs allege the new sales arm retained "Westwood's Key Ad Rep" as its president, and "[i]n doing so, Westwood and WYD collaborated to make Westwood's Key Ad Rep unavailable to Plaintiffs," despite the fact that "Westwood was to designate Westwood's Key Ad Rep as the primary sales contact for Plaintiffs, which was a key determining factor for Plaintiffs in entering in to the Rep Agreement." Sec. Am. Compl. ¶¶ 36, 38. This additional allegation does nothing to cure the deficiencies in TRNE's breach-of-contract claim. As was case with the original complaint, the Court is left with the same inability to plausibly draw the inference that Defendants breached the 2014 ad-rep contract.

### 1. Underpayment or failure to pay advertising revenues

First, Plaintiffs' original complaint failed to assert facts regarding payments that were or were not made in breach of the 2014 ad-rep contract with the requisite specificity to allow the Court to engage in any type of meaningful analysis beyond mere speculation. This new paragraph does nothing to shine light on this issue and thus fails to cure this deficiency.

### 2. Failure to pay other amounts clearly due and failure to properly account

Next, as with the original complaint, the Second Amended Complaint fails to sufficiently demonstrate how Westwood failed "to pay other amounts due for advertising revenues of Plaintiffs collected by Westwood," or even where these "other amounts" originated. Sec. Am. Compl. ¶ 60. Moreover, there is nothing detailing when or how Westwood failed "to account to Plaintiffs for ad revenues collected and disbursements due," or how Westwood failed "to issue required reports relating thereto," or what such a statement even means. Sec. Am. Compl. ¶ 60. Plaintiffs need not "set out *in* detail the facts" upon which they base their claim, but some factual allegations beyond bare legal conclusions must be pleaded. *Twombly*, 550 U.S. at 555 n.3, 127 S.Ct. 1955 (internal quotations and citations omitted) (emphasis in original). Amorphously stating that Westwood failed to pay "other amounts clearly due," or that it failed to properly "account . . . for ad revenues collected" plainly fails to meet this standard.

### 3. Failure to use commercially reasonable efforts, failure to include Plaintiffs' programs in appropriate advertising bundles, and/or failure to properly allocate advertising revenues

Likewise, the Second Amended Complaint fails to point to facts showing Defendants failed to take "commercially

reasonable" efforts in selling TRNE's programming. The parties' contract states that Westwood "shall use commercially reasonable efforts to sell Advertisements, provided, however, the Parties acknowledge herein that the means, methods, methodologies and determination made by [Westwood] in providing the services hereunder ... shall be made in [Westwood's] *sole* discretion." Contract, p. 2 ¶ 3.1 (emphasis added).

As the Plaintiffs did in their original complaint, they generically allege Westwood "failed to perform its ad rep services reasonably" and "caused Westwood's Key Ad Rep, as to who Plaintiffs were promised would lead the sales efforts for Plaintiffs, to fail to perform such duties at all" and "transferred his services, at least for the record, to an affiliate of one of the other Defendants not providing services to Plaintiffs, in order to fail to provide any performance at all to Plaintiffs...." *Compare* Sec. Am. Compl. ¶ 50, *with* Compl. ¶ 68.

. First, aside from pleading that Westwood transferred the "Key Ad Rep," Plaintiffs fail to explain *how* Westwood failed to perform its ad-rep services reasonably. To state a claim for relief, a plaintiff must point to sufficient factual matters to plausibly suggest a claim is true, legal conclusions are insufficient. *Iqbal*, 556 U.S. at 678–680, 129 S.Ct. 1937. Hence, Plaintiffs' conclusory allegation that Westwood "failed to perform its ad rep services reasonably" is plainly conclusory and thus insufficient to survive.

 Second, Westwood's transfer of the "Key Ad Rep" does not demonstrate commercial unreasonableness. The parties' 2014 ad-rep agreement expressly states that Westwood has sole discretion to determine the means, methods, and methodologies it uses in providing service under the contract. The fact that Westwood's "Key Ad Rep" was transferred, then,

would be entirely in line with this broad discretion; this is true even assuming dealing with this "Key Ad Rep" was a determining factor in TRNE's decision to enter into the contract and that TRNE detrimentally relied on this fact upon entering into the 2014 ad-rep agreement. "It is well settled that a written agreement which is complete, clear and unambiguous on its face," as is the case here, "must be enforced according to the plain meaning of its terms." *Sullivan v. Harnisch*, 96 A.D.3d 667, 667, 948 N.Y.S.2d 34 (1st Dep't 2012) (internal quotations and citations omitted). Here, "the discretion granted to [Westwood] [is] clear"; "[t]o read the" agreement as stating otherwise "would render the [ ] sentence vesting [Westwood] with complete discretion a nullity. Such a construction is untenable." *Id.* at 668, 948 N.Y.S.2d 34; *Namad v. Salomon, Inc.*, 74 N.Y. 2d 751, 753, 545 N.Y.S.2d 79, 543 N.E.2d 722 (1989). This is true even if "[TRNE] detrimentally relied on an interpretation of the [ ] agreement[ ] that turns out to have been mistaken...." *Sullivan*, 96 A.D.3d at 668, 948 N.Y.S.2d 34. Hence, Plaintiffs fail to plausibly suggest such actions were outside the scope of the rights vested to Westwood under the contract, and, thus, nothing plausibly suggests it acted unreasonably.

 Plaintiffs also added language to its breach-of-contract claim stating that while Westwood is entitled to bundle programs in its sole discretion, the contract requires it to act in a commercially reasonable manner when doing so, and Westwood has failed to do so. *See* Sec. Am. Compl. ¶ 60. Simply stating that Westwood has failed to act in a commercially reasonable manner is a legal conclusion. Construing Plaintiff's Second Amended Complaint as liberally as possible, however, it appears Plaintiffs contend Defendants, including Westwood, acted in a commercially unrea-

sonable manner by failing to be transparent in their allocation of sales proceeds to Plaintiffs; indeed, Plaintiffs argue Defendants "do not tell Plaintiffs or, to Plaintiffs' knowledge, other Independent Radio Syndicators whose programs are included in an advertising bundle, what the relative share of listeners and/or listening time generated by any particular program bundle is." Sec. Am. Compl. ¶ 44. Plaintiffs contend this is improper and gives Defendants "the opportunity to manipulate, unlawfully, wrongfully and improperly . . . payments." Sec. Am. Compl. ¶ 44. Plaintiffs state that they "are informed and believe, and on that basis allege, that from and after March 5, 2014, Defendants have taken advantage of their opportunity to manipulate the allocation process by enriching themselves." Sec. Am. Compl. ¶ 45. Specifically, they argue Defendants have used this allegedly unfettered discretion to steer advertising revenues to themselves, "at the expense of Plaintiffs and other Independent Radio Syndicators . . ." Sec. Am. Compl. ¶ 45.

 By Plaintiffs' own admission, however, they merely are "informed and believe" Defendants have manipulated the allocation process; however, they acknowledge they are not privy to "the specifics of programs in any particular bundle, . . . the percentage of audience parameters represented by each program, the separate allocations to each program, or the total amount paid."[2] Sec. Am. Compl. ¶ 48. "In the post-Twombly and Iqbal era, pleading on information and belief, without more, is insufficient to survive a motion to dismiss for failure to state a claim." Solis v. City of Fresno, No. 1:11-CV-00053 AWI GSA, 2012 WL 868681, at *8 (E.D. Cal. Mar. 13, 2012) (citing Twombly, 550 U.S. at 570, 127 S.Ct. 1955). Rather, a pleading must be "plausibly suggesting (not merely consistent with)" behavior to satisfy threshold pleading standards. Twombly, 550 U.S. at 557, 127 S.Ct. 1955. The claim should therefore be dismissed on this basis.

 Even assuming Plaintiffs' suspicion is true, however, and Defendants have manipulated the allocation process such that Plaintiffs are receiving less in revenue than they would otherwise expect, they do not establish Westwood, or any other Defendants, acted in a commercially unreasonable manner. As discussed, the parties' 2014 ad-rep agreement expressly states that Westwood has sole discretion to determine the means, methods, and methodologies it uses in providing service under the contract. See Contract, p. 2 ¶ 3.1. The Contract then goes on to say that "[TRNE] acknowledges that [ ] allocations [of advertising and advertising revenues] shall be made by [Westwood] in its sole discretion, and disclaims any right to contest such allocations made by [Westwood]." Contract, p. 2–3 ¶ 4.1. Because of the well-settled principle "that a written agreement which is complete, clear and unambiguous on its face must be enforced according to the plain meaning of its terms," Sullivan, 96 A.D.3d at 667, 948 N.Y.S.2d 34 (internal quotations and citations omitted), even if

2. Plaintiffs argue they are not privy to these specifics because Defendants have refused to disclose this information. But that is immaterial. First, Plaintiffs fail to provide sufficient facts plausibly suggesting they are entitled to such information or made proper requests for such information. Regardless, however, by acknowledging Defendants have not provided this information, this statement concedes Plaintiffs lack sufficient information to know whether Defendants are, in fact, improperly allocating advertising revenue; instead, they simply presume Defendants are because, as Plaintiffs state, Defendants have "the opportunity" to do so, Sec. Am. Compl. ¶ 44, and Defendants have not proven otherwise. Defendants, however, are not liable until proven otherwise. To the contrary, Plaintiffs must supply facts plausibly suggesting liability—which this guesswork plainly fails to do.

Defendants have been allocating advertising and revenues resulting from such advertising in a manner not otherwise anticipated by Plaintiffs, "the discretion granted to [Westwood] [is] clear"; Westwood is entitled to decide how to allocate advertising revenues, and to do so in its sole discretion. " '[T]he right of private contract is no small part of the liberty of the citizen, and the usual and most important function of courts of justice is rather to maintain and enforce contracts, than to enable parties thereto to escape from their obligation. . . .' " *Miller v. Cont'l Ins. Co.*, 40 N.Y.2d 675, 679, 389 N.Y.S.2d 565, 358 N.E.2d 258 (1976) (quoting *Baltimore v. O.S. W. Ry. Co. v. Voigt*, 176 U.S. 498, 505, 20 S.Ct. 385, 44 L.Ed. 560 (1900)).

Here, the parties agreed to vest Westwood with the discretion to allocate advertising and its resulting revenues between the various radio syndicators, programs, and networks. The fact that this provision may be harsh does not mean that the agreement is unenforceable; "[i]t is competent for the parties to make whatever contracts they may please. . . ." *Mencher v. Weiss*, 306 N.Y. 1, 8, 114 N.E.2d 177 (1953).

 Plaintiffs argue, however, that if this contractual provision is given effect, it would render the contract illusory. A contract is illusory, and thus unenforceable, if it lacks mutuality; in other words, if one party to a contract has discretion whether to perform his side of the bargain. *See Curtis Properties Corp. v. Greif Cos.*, 212 A.D.2d 259, 265, 628 N.Y.S.2d 628 (1st Dep't 1995) (explaining an illusory promise obliges one party to nothing). A "fundamental premise of contract law militates against adopting the interpretation . . . that renders a contract illusory and therefore unenforceable for lack of mutual obligation. . . ." *Id.* at 265–66, 628 N.Y.S.2d 628. This is "particularly" so "where, as here, the parties have expressed their in-

tent to be contractually bound in a writing." *Credit Suisse First Boston v. Utrecht–America Fin. Co.*, 80 A.D.3d 485, 489, 915 N.Y.S.2d 531 (1st Dep't 2011) (internal citations omitted).

 In this case, the plain words of the 2014 ad-rep contract demonstrate mutuality of obligation. While Westwood is given discretion in how to allocate advertising, and thus the proportional share of revenue each syndicator, program, and/or network is entitled, this in no way suggests it is obliged to do nothing; rather, the contract explicitly obligates Westwood to sell advertisements on TRNE's syndicated shows and to "collect and receive [TRNE's] share of the monies . . . in trust for and on behalf of [TRNE]" and to remit payments to TRNE. Contract, p. 2 ¶ 3.1, p. 3 ¶¶ 4.4–4.5. While the result of Westwood's discretion to allocate advertisements between various syndicators, programs, and networks, and to determine how to calculate the amount due to these beneficiaries may cause TRNE to receive a share of advertising revenue which is less than it anticipated, that does not render the contract illusory; indeed, even "[t]he slightest consideration is sufficient to support the most onerous obligation." *Mencher*, 306 N.Y. at 8, 114 N.E.2d 177. Hence, accepting Plaintiffs' suspicions as true, there is nothing commercially unreasonable about Westwood's actions.

### 4. Refusal to permit Plaintiffs' required access to Westwood's books and accounting records

 Finally, in dismissing Plaintiffs' original breach-of-contract claim, this Court noted that, despite Plaintiffs' allegation that Westwood "refus[ed] to permit Plaintiffs' required access to Westwood's books and accounting records," Compl. ¶ 120, Plaintiffs' original complaint was de-

void of facts pertaining to record inspection. The same is true here.

The 2014 ad-rep agreement states that TRNE has the right to examine "the appropriate portions" of Westwood's "books and records related solely to the Programs detailing the sale of the Advertisements and the booking and collection of Gross Sales and Gross Receipts." Contract, p. 4 ¶ 5. To take advantage of this right, however, TRNE must provide Westwood with advanced written notice within six months after receiving Westwood's final yearly statement. *See* Contract, p.4 ¶ 5.

Plaintiffs' Second Amended Complaint fails to set forth facts sufficiently describing the conditions of its request to examine Westwood's books and records. To be sure, in contrast with their original complaint, where Plaintiffs asserted no facts pertaining to records inspection, Plaintiffs have added a paragraph stating that they:

> demanded the right to inspect relevant portions of the books and records of Westwood, production of reports and records to which Plaintiffs are entitled, and have given notice in writing to Westwood of the existence of a dispute covering underlying payments and lack of payments, and lack of reports, and, requested good faith efforts by the parties to resolve such dispute. This request was within the time frame outline in the Rep Agreement.

 Sec. Am. Compl. ¶ 61. But this broad, sweeping assertion lacks sufficient specificity to allow it to rise above the speculative level. *Twombly*, 550 U.S. at 555, 127 S.Ct. 1955. Here, in essence, all Plaintiffs have done is formulaically recite the 2014 ad-rep's preconditions for gaining the right to inspect relevant portions of Westwood's books and records; they have not "detailed the events leading" up to their request for inspection, nor have they "provided [the] relevant dates," so that the Court can plausibly infer, rather than merely speculate, that Plaintiffs complied with the contract and provided Westwood with advanced written notice within six months after receiving Westwood's final yearly statement. *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 514, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002) (holding that providing a detail of the events that led up to the petitioner's termination as well as the relevant dates is enough to provide the respondent with fair notice of the petitioner's claims and the grounds upon which the claims rest). As the Supreme Court stated in *Twombly*, "a formulaic recitation of the elements of a cause of action," as exists here, "will not do." 550 U.S. at 545, 127 S.Ct. 1955.

### a. Summary

For all of the above-mentioned reasons, the breach-of-contract claim should be dismissed.

## II. Tort claims

 In addition to Plaintiffs' breach-of-contract claim, Plaintiffs also assert claims for conversion, breach of fiduciary duty, tortious interference with contractual relations and conspiracy to tortuously interfere with contractual relations, unjust enrichment, breach of the implied covenant of good faith and fair dealing, and fraud. In determining which law to apply to non-contractual claims related to a contract, this District has applied the forum state's law. *Vesta Corp. v. Amdocs Mgmt. Ltd. et al.*, 80 F.Supp.3d 1152, 1161–63 (D. Or. 2015) (applying the law of the forum state—Oregon—to non-contractual claims in a case dealing with a similar conflict-of-law provision). The Court will do the same here and thus analyzes these six remaining claims under Oregon law.

### A. Conversion

 The Second Amended Complaint alleges Defendants collected revenues for

Plaintiffs, failed and refused to pay revenues to Plaintiffs, and therefore "have converted funds of Plaintiffs to their personal uses from and after March 5, 2014, and conspired between themselves to do so." Sec. Am. Compl. ¶ 66. In Oregon, conversion is an "intentional exercise of dominion or control over a chattel which so seriously interferes with the right of another to control it that the actor may justly be required to pay the other the full value of the chattel." *Mustola v. Toddy*, 253 Or. 658, 663, 456 P.2d 1004 (1969) (quoting Restatement (Second) of Torts § 222A at 431).

 The tort of conversion requires chattel. Money, "under certain circumstances, may become the subject of conversion." *Wood Indust. Corp. v. Rose*, 271 Or. 103, 108, 530 P.2d 1245 (1975). "But there can be no conversion of money, unless it was wrongfully received by the party charged with conversion or unless such party was under obligation to return the specific money to the party claiming it." *Id.* (internal quotations and citations omitted).

 Much like their breach-of-contract claim, Plaintiffs' conversion claim is, for all intents and purposes, identical to the conversion claim in its original complaint; aside from adding a date "from and after" which Defendants "conspired between themselves" to convert revenues owed to Plaintiffs, and "from and after" which Plaintiffs have been harmed, Plaintiffs' current and former conversion claims are indistinguishable. *Compare* Sec. Am. Compl. ¶¶ 65–69, *with* Compl. ¶¶ 123–127. Hence, the same deficiencies that prompted the Court to dismiss Plaintiffs' former

conversion claim apply with equal weight here—namely, Plaintiffs fail to identify sums, approximation of sums, or account holdings to which they claim right of possession under the first element of conversion.

Nor do Plaintiffs establish facts supporting Defendants' unauthorized possession of funds, beyond conclusively stating Defendants failed and refused to pay revenues they allegedly owed to Plaintiffs and that Plaintiffs "are informed and believe" this is because Westwood steers outsized advertising shares to itself and other Defendants. Sec. Am. Compl. ¶¶ 44–46. As discussed, simply pleading on information and belief is insufficient. Consequently, merely stating Defendants failed and refused to pay revenues, or on "information and belief" steered outsized shares to itself and other Defendants, "without further factual enhancement," precludes the Court from plausibly concluding Defendants converted revenues owed to Plaintiffs. *Twombly*, 550 U.S. at 546, 127 S.Ct. 1955.[3] The conversion claim should therefore be dismissed.

## B. Breach of fiduciary duty

Plaintiffs allege they and Westwood are parties to a fiduciary relationship and that Westwood has breached its fiduciary duties to Plaintiffs. *See* Sec. Am. Compl. ¶ 71. As with their conversion claim, Plaintiffs' current and former fiduciary duty claims are indistinguishable; Plaintiffs have simply added a date to their Second Amended Complaint "from and after" which the parties entered into a fiduciary relationship and "from and after" which Westwood breached its fiduciary relationship. *Compare* Sec. Am. Compl. ¶¶ 70–74,

---

**3.** Moreover, as discussed, even assuming Plaintiffs' suspicions are correct and Westwood has steered shares of revenue to Defendants at the expense of Plaintiffs, the 2014 ad-rep contract plainly demonstrates the parties agreed to vest Westwood with the discretion to allocate advertising and advertising revenues between various radio syndicators, programs, and networks in its discretion. Contract, p. 2–3 ¶ 4.1. Accordingly, Plaintiffs fail to plausibly suggest they are entitled to any such revenues.

*with* Compl. ¶¶ 128–32. As explained below, the inclusion of a date does nothing to cure the deficiencies that necessitated dismissal of this claim in the first place.

In order to establish a breach of fiduciary duty, a plaintiff must show a special relationship in which the *"nature of the parties' relationship itself* allowed one party to exercise control in the first party's best interests." *Bennett v. Farmers Ins. Co. of Or.*, 332 Or. 138, 161, 26 P.3d 785 (2001) (emphasis in original). Here, the Court looks to the type of relationship that exits. *Id.* As they did in moving to dismiss Plaintiffs' original complaint, Defendants argue no fiduciary relationship exists and that this claim fails as a matter of law. They refer the Court to the 2014 ad-rep agreement, which states; "[n]othing in this Agreement shall be construed as a teaming, joint venture or any other similar arrangement between the Parties, it being understood and agreed that the relationship of the Parties is that of independent contractors." Def.'s Mot. to Dismiss, p. 25; Contract, p. 6, ¶ 8.5.

As the Court explained in its first Findings and Recommendation, the 2014 ad-rep contract and pleading papers do not establish that the contract pertains to any Plaintiffs beyond TRNE. Accordingly, because Plaintiffs' claim for breach of fiduciary duty relies solely on the parties' contractual relationship, as set forth in the 2014 ad-rep agreement, Plaintiffs cannot establish a fiduciary relationship between Westwood and any Plaintiff beyond TRNE.

Next, while TRNE has established a contractual relationship with Westwood, has alleged an agency relationship with Westwood, and has alleged that Westwood held funds in trust for TRNE as a result of that relationship, TRNE fails to plausibly establish a fiduciary relationship between Westwood and TRNE. Indeed, the 2014 ad-rep agreement expressly disclaims a fiduciary relationship; thus, if a relationship existed it must have been implied, and no implied fiduciary duty exists absent a "special relationship" between the parties. *Bennett*, 332 Or. at 160, 26 P.3d 785. In determining whether a special relationship exists:

> The focus is not on the subject matter of the relationship, such as one party's financial future; nor is it on whether one party, in fact, relinquished control to the other. The focus instead is on whether the *nature of the parties' relationship itself* allowed one party to exercise control in the first party's best interests. In other words, the law does not imply a tort duty simply because one party to a business relationship begins to dominate and to control the other party's financial future. Rather, the law implies a tort duty only when that relationship is of the type that, by its nature, allows one party to exercise judgment on the other party's behalf.

*Id.* at 161–62, 26 P.3d 785 (internal citations omitted) (emphasis in original). Simply put, where the parties enter into a contractual relationship, no special relationship exists unless one party "relinquish[es] control over his business" and the other "exercise[s] independent judgment" on the former's behalf. *Id.* at 162, 26 P.3d 785.

The Second Amended Complaint alleges Westwood breached its duty because Westwood acted as TRNE's agent in contracting to sell advertising on TRNE's behalf. Sec. Am. Compl. ¶ 71. It alleges Westwood agreed to hold advertising revenues in trust for TRNE, and states that Westwood was in breach by "engaging in the actions hereinabove alleged, to [TRNE's] detriment and/or to the advantage of Defendants, all in violation of Westwood's fiduciary obligations to [TRNE]." Sec. Am. Compl. ¶¶ 71–72. As discussed, the actions TRNE speaks of

consist of allegedly steering outsized shares of revenue away from Plaintiffs and toward Defendants.

■■ Taken as true, this does not demonstrate the type of special relationship needed to establish a fiduciary duty on the part of Westwood. TRNE argues a special relationship exists based on these facts because "Westwood handles [its] funds" and thus it relinquishes "the lifeblood of [its] business" to Westwood, namely, its advertising revenues. Resp. to Mot. to Dismiss, at 11–12. As the *Bennett* court stated, however, the law does not impose a fiduciary duty on one party to a business relationship simply because that party "begins to dominate and to control the other party's financial future." 332 Or. at 162, 26 P.3d 785. Rather, the law imposes a fiduciary duty only when one party "relinquish[es] control over his business" and the other "exercise[s] independent judgment" on the former's behalf. *Id.* at 162, 26 P.3d 785. And, here, while Westwood may indeed "handle" TRNE's advertising funds and thus "dominate its financial future," Westwood does not have control over TRNE's business decisions; indeed, the 2014 ad-rep agreement is non-exclusive, Contract, p. 1 ¶ 1.2, and, therefore, nothing precludes TRNE from halting its business relationship with Westwood and thus Westwood's concurrent control over its financial future. Hence, "the nature of their relationship was not one in which [Westwood] was to step into [TRNE's] shoes and to manage [its] business affairs. Accordingly, the parties were not in a 'special relationship,'" and Westwood did not owe a corresponding fiduciary duty to TRNE. *Id.* at 162–63, 26 P.3d 785. TRNE has thus not set forth concrete facts plausibly suggesting a breach of fiduciary duty.

### C. Tortious interference

■■ Plaintiffs allege Defendants interfered, and conspired to interfere, with contracts between Plaintiffs and the individuals that hosted Plaintiffs' various talk radio programs. *See* Sec. Am. Compl. ¶¶ 75–81. Again, as with their conversion and breach of fiduciary duty claims, Plaintiffs' only substantive change to its tortious interference claim is the addition of a date "[o]n or after" which Defendants conspired to "rupture" contracts between Plaintiffs and the individuals that hosted Plaintiffs' various talk radio programs, and "on or after" which the actual breaches of such contract occurred. *Compare* Sec. Am. Compl. ¶¶ 75–79, *with* Compl. ¶¶ 133–39.

■■ Like the original complaint, Plaintiffs' tortious interference claim fails to delineate where the contracts between Plaintiffs and its hosts were executed. The Court assumes, as it did with the original complaint, that the contracts between Plaintiffs and the individuals that hosted Plaintiffs' various talk radio programs were executed in Oregon; therefore, Oregon law applies. A claim in Oregon for intentional interference with economic relations must allege:

 (1) Existence of a professional or business relationship[ ];

 (2) intentional interference with that relationship or advantage;

 (3) by a third party;

 (4) accomplished through improper means or for an improper purpose;

 (5) a causal effect between the interference and the harm to the relationship or prospective advantage; and

 (6) damages.

*Allen v. Hall,* 328 Or. 276, 281, 974 P.2d 199 (1999) (internal citations omitted).

■■ The Court's review of Plaintiffs' Second Amended Complaint finds no clear statement of a relationship, contractual or otherwise, that Plaintiffs have with any identifiable talk radio host. As stated

above, Plaintiffs need not "set out in detail the facts" upon which they base their claim, but some factual allegations must be pleaded. *Twombly*, 550 U.S. at 555 n.3, 127 S.Ct. 1955 (internal quotations and citations omitted). Perhaps recognizing this, Plaintiffs state in their Response to Defendants' Motion to Dismiss that they "have been reluctant to identify particular hosts by name ... due·to the fact that the hosts at issue are public figures who Plaintiffs attempt to provide some level of confidentiality protection for." Resp. to Mot. to Dismiss, at 12. They state, "at a minimum," however, that Defendants have interfered with host Andrea Tantaros's relationship with Talk Radio Network Entertainment, Inc., and that, if required, they will "incorporate these highly confidential specifics into the allegations. . . ." Resp. to Mot. to Dismiss, at 12.

Aside from the obvious fact that if Plaintiffs were truly concerned about the confidentiality of their hosts they could have filed their Second Amended Complaint under seal, the simple addition of names, without more, does nothing to cure the deficiencies in their Second Amended Complaint. Plaintiffs must not simply provide the Court with the hosts' names, but must allege facts plausibly showing a professional or business relationship existed between Plaintiffs and those named hosts, that that relationship was interfered with intentionally and improperly by Defendants, and that a causal link between damages Plaintiffs suffered and this interference exists. Nothing else in Plaintiffs' thirty-two-page complaint comes close to meeting this standard. Rather, Plaintiffs simply insert a paragraph into their Second Amended Complaint rehashing the elements of tortious interference. *See* Sec. Am. Compl. ¶ 58. As articulated throughout this opinion, however, "a formulaic recitation of a cause of action's elements will not do." *Twombly*, 550 U.S. at 545,

127 S.Ct. 1955. This claim must therefore be dismissed.

## D. Unjust enrichment

Plaintiffs argue Defendants Westwood and Cumulus have been unjustly enriched at Plaintiffs' expense. *See* Sec. Am. Compl. ¶ 94. Aside from two conclusory sentences stating "Defendants were actually enriched" and "Westwood and Cumulus have not conferred a corresponding benefit·on Plaintiffs," Plaintiffs' unjust enrichment claim is taken verbatim from its original complaint. *Compare* Sec. Am. Compl. ¶¶ 90–94, *with* Compl. ¶¶ 156–59. And, as was true with its original·complaint, Plaintiffs' current unjust enrichment claim fails to plausibly suggest the type of behavior necessary to satisfy threshold pleading standards.

To adequately plead unjust enrichment, a plaintiff must allege: (1) a benefit conferred; (2) awareness by the recipient that a benefit has been received; and (3) circumstances where "it would be unjust to allow retention of the benefit without requiring the recipient to pay for it." *Edward D. Jones & Co. v. Mishler*, 161 Or.App. 544, 569, 983 P.2d 1086 (1999) (citing *Jaqua v. Nike, Inc.*, 125 Or.App. 294, 298, 865 P.2d 442 (1993)).

The Second Amended Complaint states, as did the original, that "Plaintiffs. conferred a benefit upon Westwood and Cumulus by permitting Westwood to sell Commercial Inventory for Plaintiffs' programs, and by paying Westwood a commission for that service." Sec. Am. Compl. ¶ 91. It then goes on to state that "Westwood and Cumulus were aware that they received th[ese] benefits," Sec. Am. Compl. ¶ 92, and that "[u]nder the circumstances, it would be unjust to allow Westwood and Cumulus to receive th[ese] benefits without paying Plaintiffs for them." Sec. Am. Compl. ¶ 93. The Second Amended Com-

plaint, like the original, then refers to "conduct described above" and states that it is through this above-described conduct that Westwood and Cumulus have been unjustly enriched. Sec. Am. Compl. ¶ 94.

In Plaintiffs' Response to Defendants' Motion to Dismiss the Second Amended Complaint, Plaintiffs clarify what they mean by "conduct described above," stating Westwood and Cumulus were unjustly enriched because:

> they were in possession of ad revenues generated by the sale of ads in Plaintiffs' Programs, and that it would be unjust to keep those revenues for themselves, yet knowingly did so under the specious claim that their own contractual language is, in essence, designed to be able to claim that they are free to allocate their clients' moneys to themselves if they wish to do so.

Resp. to Mot. to Dismiss, at 11. Indeed, as discussed earlier, the Second Amended Complaint states that "Defendants have not been transparent in their allocations" of sales proceeds. Sec. Am. Compl. ¶ 44. Defendants, Plaintiffs state, "do not tell Plaintiffs or, to Plaintiffs' knowledge, other Independent Radio Syndicators whose programs are included in an advertising bundle, what the relative share of listeners and/or listening time generated by any particular program bundle is." Sec. Am. Compl. ¶ 44. Plaintiffs allege that this is an "improper procedure," which gives Defendants "the opportunity to manipulate, unlawfully, wrongfully and improperly ... payments." Sec. Am. Compl. ¶ 44. It concludes that "Plaintiffs are informed and believe, and on that basis allege, that from and after March 5, 2014, Defendants have taken advantage of their opportunity to manipulate the allocation process by enriching themselves." Sec. Am. Compl. ¶ 45.

 Like its original unjust enrichment claim, the allegations used to support this claim fail to specify an identifiable benefit conferred that is germane to Plaintiffs. By Plaintiffs' own admission, they merely are "informed and believe" Defendants have manipulated the allocation process; however, they acknowledge they are not privy to "the specifics of programs in any particular bundle, ... the percentage of audience parameters represented by each program, the separate allocations to each program, or the total amount paid." Sec. Am. Compl. ¶ 48. As discussed, simply pleading on information and belief is insufficient; a complaint must state more than a suspicion to proceed, and the Court cannot presume a bad act from an opportunity to perform a bad act. Rather, a pleading must be "plausibly suggesting (not merely consistent with)" behavior to satisfy threshold pleading standards. *Twombly*, 550 U.S. at 557, 127 S.Ct. 1955. The claim should therefore be dismissed.

 Moreover, as explained, even assuming Plaintiffs' suspicion is true, and Defendants have manipulated the allocation process such that Plaintiffs are receiving less than they would otherwise expect, Westwood was and is entitled to decide how to allocate advertising and the resulting revenues, and to do so in its sole discretion. Accordingly, Westwood was not unjustly conferred a benefit on this basis. "The right to contract privately is part of the liberty of citizenship, and an important office of the courts is to enforce contractual rights and obligations." *Bagley v. Mt. Bachelor, Inc.*, 356 Or. 543, 551, 340 P.3d 27 (2014) (internal citations omitted). As articulated, the parties agreed to bestow Westwood with the discretion to allocate advertising and its resulting revenues between the various radio syndicators, programs, and networks; "[t]he fact that the effect of [this] provision may be harsh as applied to [Plaintiffs] does not mean that the agreement is, for that reason alone, contrary to public policy...." *Id.* at 552,

340 P.3d 27. Hence, accepting Plaintiffs' suspicions as true, there is nothing unjust or improper about the benefits Plaintiffs allege Westwood and Cumulus received. The claim must therefore be dismissed.

### E. Implied covenant

Plaintiffs next claim "Westwood has breached the implied covenant of good faith and fair dealing ... owed to Plaintiffs by Westwood under the Rep Agreement." Sec. Am. Compl. ¶ 98. In similar fashion to its previous claims, Plaintiffs' implied covenant claim mirrors their original implied covenant claim; the only difference is the addition of dates "from and after" which Westwood breached the covenant and the conclusory allegation that Westwood "fail[ed] to act in a commercially reasonable manner," thereby breaching the implied duty of good faith and fair dealing. *Compare* Sec. Am. Compl. ¶¶ 95–100, *with* Compl. ¶¶ 160–165.

■ Under Oregon law, an implied covenant of good faith and fair dealing claim requires a contractual obligation between the parties. *Sheets v. Knight*, 308 Or. 220, 233, 779 P.2d 1000 (1989) (*abrogated on other grounds*). The Complaint satisfies this as it pertains to TRNE only.

■ Every contract contains the obligation of good faith in its performance. *Klamath Off–Project Water Users, Inc. v. Pacificorp*, 237 Or.App. 434, 445, 240 P.3d 94 (2010). "The purpose of that duty is to prohibit improper behavior in the performance and enforcement of contracts, and to ensure that the parties will refrain from any act that would have the effect of destroying or injuring the right of the other party to receive the fruits of the contract." *Id.* (internal quotations and citations omitted). Nevertheless "the duty cannot contradict an express contractual term, nor otherwise provide a remedy for an unpleasantly motivated act that is expressly permitted by the contract." *Id.* (internal quotations and citations omitted).

■ TRNE broadly argues Westwood has breached the covenant of good faith and fair dealing by "engaging in the conduct described above, and by failing to act in a commercially reasonable manner...." Sec. Am. Compl. ¶ 98. Much like its original complaint, TRNE's broad allegations of misconduct do not rise to the level of specificity required to survive pleading. TRNE pleads no facts when it states Westwood acted in a commercially unreasonable manner; instead, it relies upon its "information and belief" that Westwood has manipulated the allocation process, while at the same time acknowledging it does not know "the specifics of programs in any particular bundle, ... the percentage of audience parameters represented by each program, the separate allocations to each program, or the total amount paid." Sec. Am. Compl. ¶ 48. Federal pleading standards require TRNE to allege more than a theory that Westwood is generally acting in bad faith; it must at least allege enough factual matter to plausibly suggest conduct occurred. *Iqbal*, 556 U.S. at 678, 129 S.Ct. 1937.

■ Further, as explained in detail throughout this Findings and Recommendation, Westwood was entitled to decide how to allocate advertising and the resulting revenues, and to do so in its sole discretion. Accordingly, even if Plaintiffs' suspicions and beliefs are correct and Westwood was allocating revenue in an unanticipated manner, this Court cannot impose a remedy "for an unpleasantly motivated act that is expressly permitted by the contract." The implied covenant claim therefore fails.

### G. Fraud

■ Finally, Plaintiffs allege Defendants fraudulently induced them to enter

into the 2014 ad-rep contract. Plaintiffs contend former Cumulus CEO, Lewis Dickey, Jr., made representations that Cumulus and its Westwood predecessor had a "desire to start a new leaf for Westwood in its dealing with Independent Radio Syndicators, including Plaintiffs, and in correcting, eliminating and rectifying past unlawful actions of Westwood." Sec. Am Compl. ¶ 84. They also assert that various alleged falsities and misrepresentations were "not known by Plaintiffs at the time TRNE entered into the Rep Agreement for the benefit of all Plaintiffs." Sec. Am Compl. ¶ 87. Aside from the addition of two sentences, stating Defendants represented to Plaintiffs they would no longer engage in the prior wrongful conduct that was the basis of a former lawsuit between the parties, and that Plaintiffs relied detrimentally on this representation, Plaintiffs' fraud claim is identical to that contained in its original complaint. *Compare* Sec. Am. Compl. ¶¶ 82–89, *with* Compl. ¶¶ 140–147.

 Fraud claims must be pleaded with particularity, although "[m]alice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b); *Iqbal*, 556 U.S. at 686–87, 129 S.Ct. 1937. Under Oregon law, a fraud claim must include:

> (1) a representation; (2) its falsity; (3) its materiality; (4) the speaker's knowledge of its falsity or ignorance of its truth; (5) his intent that it should be acted on by the person and in the manner reasonably contemplated; (6) the hearer's ignorance of its falsity; (7) his reliance on its truth; (8) his right to rely thereon; and (9) his consequent and proximate injury.

*Webb v. Clark*, 274 Or. 387, 391, 546 P.2d 1078 (1976) (*en banc*) (internal quotations and citations omitted).

 Plaintiffs claim that Cumulus and Westwood made misrepresentations that were "false, knowing, intentional and

fraudulent." Sec. Am. Compl. 83. The Court need not accept legal conclusions couched as factual allegation, even in the context of fraud. *Twombly*, 550 U.S. at 555–57, 127 S.Ct. 1955. The Second Amended Complaint states that Mr. Dickey "would ensure that prior wrongful conduct ... would not be repeated," and that revenue allocation under the contract would be "in a fair, proper and correct manner" with "fair and open access" to networked radio stations. Sec. Am. Compl. ¶ 39. The Second Amended Complaint also alleges that Mr. Dickey represented that Westwood would "pursue aggressive sales on behalf of Plaintiffs and other Independent Radio Syndicators," Sec. Am. Compl. ¶ 39, and that Plaintiffs "reasonably relied" on these collective representations. Sec. Am. Compl. ¶ 40.

 As this Court stated upon addressing Plaintiffs' original complaint, Mr. Dickey's alleged misrepresentations are promises to take action in the future. Where a plaintiff alleges fraud based on promises to do something in the future, the plaintiff "must prove that [the] defendant either intended not to perform when [the defendant] made the promise[ ], or that [the defendant] made the promise with reckless disregard for whether [the defendant] could perform." *Commc'ns Grp. v. GTE Mobilnet of Or.*, 127 Or.App. 121, 126, 871 P.2d 502 (1994). "[T]he mere fact of nonperformance" is insufficient. *Id.*

Plaintiffs' Second Amended Complaint lacks factual assertions indicating Mr. Dickey intended Westwood not act on his promises, and Plaintiffs do not allege Mr. Dickey made such promises with reckless disregard as to Westwood's ability to perform. Rather, Plaintiffs rely on the mere allegations of nonperformance, and the conclusory statement that Defendants had no intention of rectifying their past wrongful conduct, without supplying any facts

suggesting why this is so. This is insufficient to state a claim for fraud under such circumstances. Hence, Plaintiffs' fraud claim should be dismissed.

## III. Dismissal with prejudice

■ Aside from Plaintiffs' tortious interference, fraud, and fiduciary duty claims, each of Plaintiffs' claims rely on their assumption that Defendants have manipulated the allocation process by over-allocating advertising revenues to themselves, at the expense of Plaintiffs and other radio syndicators. As explained, however, even if Plaintiffs could provide sufficient factual allegations to raise this assertion above the speculative level, the parties' 2014 ad-rep contract vests Westwood with the right to decide how to allocate advertising and the resulting revenues, and to do so in its sole discretion. Accordingly, the deficiencies in Plaintiff's Second Amended Complaint cannot possibly be cured. Hence, any attempt to amend would be futile, necessitating dismissal of all claims besides the tortious interference, fraud, and fiduciary duty claims with prejudice. *Rouse v. U.S. Dep't of State*, 567 F.3d 408, 418–19 (9th Cir. 2009).

Moreover, the Court recommends dismissing the entirety of the Second Amended Complaint with prejudice because Plaintiffs have failed to plead the facts with the specificity needed to meet the requisite pleading standards despite prior opportunities to do so. In Plaintiffs' Response to Defendants' Motion to Dismiss, they assure the Court that if the Court finds Plaintiffs' Second Amended Complaint deficient, "Plaintiffs can correct any deficiencies, and request leave to do so...." Resp. to Mot. to Dismiss, at 13. Indeed, Plaintiffs argue they "have not

plead [sic] every fact with exact precision" and can "further revise [ ] allegations" so as to address the Court's concerns, if need be. Resp. to Mot. to Dismiss, at 13. In sum, Plaintiffs ask for dismissal without prejudice.

Plaintiffs have submitted three complaints to this Court.[4] Despite these previous opportunities, Plaintiffs have thus far failed to plead the facts with the precision needed to meet the *Twombly* and *Iqbal* pleading standards. In fact, this Court provided Plaintiffs with "a detailed explanation of why" their legal theories in the original complaint were deficient. *Loos v. Immersion Corp.*, 762 F.3d 880, 890 (9th Cir. 2014). Despite this, as set forth throughout this Report and Recommendation, Plaintiffs have "essentially re[pleaded] the same facts and legal theories" in their Second Amended Complaint. *Id.* at 890–91 (internal quotations and citations omitted). While the Court is cognizant of the policy favoring resolution of cases on their merits, Plaintiffs' failure "to add the requisite particularity to [their] claims," has prevented this case from moving forward. *Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981, 1007 (9th Cir. 2009). And while Plaintiffs now ask for leave to replead yet again, stating they "can correct any deficiencies," this ignores the fact that they have had every opportunity to do so. Yet instead of taking advantage of such opportunities, Plaintiffs have submitted a Second Amended Complaint that is substantively identical to its original complaint.

Because of this, the Court recommends dismissing the Second Amended Complaint with prejudice. *See Loos*, 762 F.3d at 890–91 (holding that the district court did not abuse its discretion in deciding to dismiss

4. The second complaint, titled Amended Complaint, was not ruled on by the Court, as Plaintiffs subsequently moved to file a third

complaint, the Second Amended Complaint, which is the current operative complaint.

the plaintiff's amended complaint without leave to amend "because Plaintiff failed to correct the deficiencies identified in his original complaint"); *see also Zucco Partners, LLC*, 552 F.3d at 1007 ("where the plaintiff has previously been granted leave to amend and has subsequently failed to add the requisite particularity to his claims, the district court's discretion to deny leave to amend is particularly broad").

## RECOMMENDATION

For the reasons stated above the Court should GRANT Defendants' motion to dismiss, and Plaintiffs' Second Amended Complaint should be dismissed without leave to amend.

This Report and Recommendation will be referred to a district judge. Objections, if any, are due no later than fourteen (14) days after the date this recommendation is filed. Fed. R. Civ. P. 72. If objections are filed, any response is due within fourteen (14) days after being served with a copy of the objections. *Id.* Parties are advised that the failure to file objections within the specified time may waive the right to appeal the District Court's order. *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).